IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PHILADELPHIA GUN CLUB, INC., et al., Plaintiffs, | : | CIVIL ACTION |
| v. | : | NO. 14-2012 |
| SHOWING ANIMALS RESPECT AND KINDNESS, INC., et al., Defendants. | : | |

**MEMORANDUM**

**MARILYN HEFFLEY, U.S.M.J.** **October 3, 2016**

In this civil action, Plaintiffs Philadelphia Gun Club ("PGC"), Edward Bruce DiDonato, Jordan Irving, Clark Travers, William Comly, Karl Natriello, Carl Badenhausen and John Ross (collectively, "Plaintiffs") contend that Defendants Showing Animal Respect and Kindness, Inc. ("SHARK"), Steven Omar Hindi, Brandon Bohn, Stuart Chaifetz, Michael David Kobliska and Janet Enoch (collectively, "Defendants") violated the Driver's Privacy Protection Act of 1994 ("DPPA"), 18 U.S.C. § 2721 et seq., and assert various state law claims against those Defendants. Defendants have moved for summary judgment. For the following reasons, the Court grants Defendants' motion as to Plaintiffs' DPPA claim only and dismisses Plaintiffs' remaining claims without prejudice to be raised in the appropriate state court.

## I. PROCEDURAL HISTORY

Plaintiffs initiated this lawsuit by filing their Complaint on April 14, 2014 pleading violations of the DPPA, and several Pennsylvania state torts, including defiant trespass, defamation, libel, invasion of privacy, tortious interference with existing contractual relations, tortious interference with prospective economic relations, and intentional infliction of emotional

distress. See Compl. (Doc. No. 1). Federal jurisdiction is present under 28 U.S.C. § 1331 as a result of Plaintiffs' federal DPPA claim.

On February 2, 2015, Defendants moved for summary judgment on all of Plaintiffs' claims. See Defs.' Br. (Doc. No. 29). Plaintiffs filed their response in opposition on February 20, 2015. See Pls.' Resp. (Doc. No. 36). Defendants filed their reply on March 6, 2015. See Defs.' Reply (Doc. No. 39). Due to outstanding discovery issues still being addressed at the time of these filings, the Court permitted Plaintiffs to supplement their response after they received an outstanding production of video footage from the Defendants. Plaintiffs filed their supplemental brief on June 30, 2015 and an addendum to it on July 7, 2015. See Pls.' Suppl. Br. (Doc. No. 48) and Pls.' Add. (Doc. No. 49). Defendants filed their supplemental reply brief on July 10, 2015. See Defs.' Suppl. Reply (Doc. No. 52).

On January 5, 2016, the Court entered an Order (Doc. No. 57) granting the parties' joint request that this case be stayed and abeyed while the parties attempted to resolve the issues raised in this lawsuit in conjunction with a consent decree entered into by the parties in a separate case pending in the Court of Common Pleas of Bucks County, Pennsylvania. During a telephone conference on September 26, 2016, the parties advised the Court that despite their best efforts, settlement of this case is unlikely. Accordingly, Defendants' summary judgment motion is now ripe for disposition.

## II. FACTUAL BACKGROUND

SHARK, along with the individual Defendants, have engaged in protesting pigeon shoots organized by the PGC. SHARK's activities concerning the pigeon shoots have included filing legal complaints, conducting demonstrations during the pigeon shoots, filming the activity, recovering and photographing wounded birds on the Delaware River and along its shore, and

lobbying the Pennsylvania state legislature to ban the practice of pigeon shooting. SHARK has also conducted an online anti-pigeon shooting campaign through its Operation Bright Light and PaShame websites. These websites contain photographs of members of PGC who have participated in pigeon shoots, including some of the individual Plaintiffs. Furthermore, SHARK engages in the practice of photographing and videotaping license plates and has posted pictures of license plates along with photos of drivers on the internet. Several of the individual Plaintiffs allege that the Defendants used their license plate numbers to access motor vehicle records to obtain their personal information. Defendants deny that they accessed motor vehicle records to obtain personal information for any of the individual Plaintiffs.

## III. ANALYSIS

### A. Summary Judgment Standard

Under the well-established summary judgment standard, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Williams v. Wells Fargo Bank, No. 14-2345, 2015 WL 1573745, at *3 (E.D. Pa. Apr. 9, 2015) (quoting Wright v. Corning, 679 F.3d 101, 105 (3d Cir. 2012)). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

Where the defendant moves for summary judgment, the burden is on the defendant to

show that the plaintiff has failed to establish one or more essential elements of its case. Burton v. Teleflex Inc., 707 F.3d 417, 425 (3d Cir. 2013) (citing Hugh v. Butler Cnty. Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005)). The court shall consider facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Id. (citing Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ., 470 F.3d 535, 538 (3d Cir. 2006)). To prevail on summary judgment, however, "the non-moving party must present more than a mere scintilla of evidence; 'there must be evidence on which the jury could reasonably find for the [non-moving party].'" Burton, 707 F.3d at 425 (quoting Jakimas v. Hoffman-La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007)); see also Anderson, 477 U.S. at 252.

**B. Plaintiffs' DPPA Claim is Dismissed**

Plaintiffs, in their Complaint and throughout their briefing, contend that Defendants obtained some of the individual Plaintiffs' personal information by photographing their license plates and using the license plate numbers to access motor vehicle records in violation of the DPPA. Defendants challenge Plaintiffs' DPPA claim by asserting that they have produced no evidence to support a finding that Defendants accessed motor vehicle records to obtain such information. Because Plaintiffs' claim that Defendants accessed motor vehicle records to obtain several of the individual Plaintiffs' personal information rests on sheer conjecture, I will grant Defendants' summary judgment motion as to the DPPA claim.

Pursuant to the DPPA, "[a] person who knowingly obtains, discloses or uses personal information from a motor vehicle record, for a purpose not permitted under this chapter shall be

[civilly] liable to the individual to whom the information pertains." 18 U.S.C. § 2724(a).[1] The DPPA defines the phrase "motor vehicle record" to mean "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles." 18 U.S.C. § 2725(1).[2]

Plaintiffs, in their briefing, spend a great deal of time arguing that a jury could find that Defendants obtained the personal information of some of the individual Plaintiffs by accessing motor vehicle records. They support this contention by focusing on and providing myriad examples of Defendants' practice of photographing drivers and their license plates and posting them on the internet. While this practice may indeed be in furtherance of Defendants' efforts to identify the individuals being photographed, it does not support a finding that Defendants accessed motor vehicle records in violation of the DPPA to obtain certain of the individual Plaintiffs' personal information.

On a motion for summary judgment, a court does not weigh the evidence or determine the truth of the matters in dispute. Anderson, 477 U.S. at 249. However, summary judgment is the moment when a party must present what evidence it has that may convince a trier of fact to accept its version of events. See Schacht v. Wis. Dept. of Corr., 175 F.3d 497, 504 (7th Cir. 1999). To avoid summary judgment, the non-moving party must present more than a mere scintilla of evidence to support its position. Burton, 707 F.3d at 425.

---

[1] Plaintiffs appear to argue that the DPPA protects "personal information" even if it was not acquired from a motor vehicle record. See Pls.' Resp. at 7. This interpretation of the statute is incorrect. See Margan v. Niles, 250 F. Supp. 2d 63, 71 (N.D.N.Y. 2003) (finding that without evidence that their personal information was obtained from a motor vehicle record, plaintiffs could not maintain a DPPA action).

[2] Plaintiffs claim, without legal support, that a license plate is a motor vehicle record. See Pls.' Add. at 8 n.4. A license plate is not a "motor vehicle record" as defined under the DPPA. See 18 U.S.C. § 2725.

Plaintiffs have not satisfied this standard. They have failed to produce any evidence from which a reasonable jury could find by a preponderance of the evidence that Defendants violated the DPPA by acquiring some of the individual Plaintiffs' personal information from motor vehicle records. Defendants' practice of photographing license plate numbers in an effort to identify individuals does not provide the kind of circumstantial evidence needed in order for a jury to make a reasonable inference that Defendants accessed motor vehicle records. Such conjecture would require a jury to speculate and "[s]peculation is not a substitute for the kind of circumstantial evidence needed to preclude the entry of summary judgment." Cottrill v. Spears, 87 F. App'x 803, 806 (3d Cir. 2004). For these reasons, Plaintiffs' DPPA claim is dismissed.

**C. Plaintiffs' Allegation of Conspiracy to Violate the DPPA Also Fails**

Plaintiffs attempt to save their DPPA claim by arguing that Defendants conspired to violate the DPPA. However, there is no federal cause of action for conspiracy under common law. This does not mean that Plaintiffs may not offer proof of a conspiracy to violate the DPPA, as evidence of a conspiracy may be used to connect the actions of the various defendants. See Margan v. Niles, 250 F. Supp. 2d 63, 76 (N.D.N.Y. 2003). Plaintiffs, however, offer no evidence to connect the actions of the Defendants in this case with a DPPA violation.

Instead, Plaintiffs argue, in a conclusory fashion, that there are "potentially hundreds of millions" of co-conspirators who may have provided Defendants with personal information from motor vehicle records. Pls.' Resp. at 15. Plaintiffs also cite to comments connected to videos allegedly posted by Defendants on YouTube. Id. at 17-18. The comments are posted by unknown individuals who allegedly offer to use personal information from motor vehicle records to identify persons in the videos. Id. at 17-18, 20. These comments, however, are hearsay, do not refer in any way to the Plaintiffs in this case, and would invite reasonable jurors to engage in

rank speculation. For these reasons, I will grant Defendants' summary judgment motion with respect to Plaintiffs' allegation that Defendants conspired with unknown third parties to acquire certain of the individual Plaintiffs' personal information from motor vehicle records.

**D. Spoliation**

Plaintiffs also ask the Court, when making its determination, to impute an adverse inference against Defendants because of spoliated evidence and deny Defendants' summary judgment motion. See Pls.' Br. at 1-6, Pls.' Add. at 4-19. Spoliation commonly refers to a modification, destruction, or failure to produce relevant evidence. Bull v. United Parcel Serv., Inc., 665 F.3d 68, 73 (3d Cir. 2012). "Spoliation occurs where: the evidence was in the party's control; the evidence is relevant to the claims or defenses in the case; there has been actual suppression or withholding of evidence; and, the duty to preserve the evidence was reasonably foreseeable to the party." Id. A litigant is "under a duty to preserve what it knows, or reasonably should know, will likely be requested in reasonably foreseeable litigation." Scott v. IBM Corp., 196 F.R.D. 233, 249 (D.N.J. 2000). "[S]poliation of documents that are merely withheld, but not destroyed, requires evidence that the documents are actually withheld, rather than—for instance—misplaced. Withholding requires intent." Bull, 665 F.3d at 79.

Plaintiffs' only "evidence" to support a spoliation finding is their unsupported allegation that certain video footage and other information have not been produced. See Pls.' Br. at 1-6, Pls.' Add. at 4-19. Plaintiffs, however, have made no reasonable showing that the evidence at issue existed or that it was in Defendants' possession at the time Plaintiffs' Complaint was filed. Nor have Plaintiffs offered evidence of intentional or even negligent withholding or destruction of evidence after the Defendants became aware of this litigation. Therefore, the Court denies Plaintiffs' request.

## IV. PLAINTIFFS' REMAINING CLAIMS ARE DISMISSED WITHOUT PREJUDICE

With Plaintiffs' DPPA claim dismissed, the only remaining claims fall under Pennsylvania state law.[3] State courts should generally be the final arbiters of state law claims, particularly when federal claims are dismissed before trial. See United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring them a surer-footed reading of applicable law. Certainly if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."). Once all claims within a federal court's original jurisdiction have been dismissed, the decision of whether to continue to exercise supplemental jurisdiction over the state law claims rests in this Court's discretion. See 28 U.S.C. § 1367(c)(2).[4]

In order to resolve Plaintiffs' remaining state law claims, the Court would need to apply and interpret Pennsylvania state law. Considerations of comity, fairness, and judicial economy strongly favor having Pennsylvania courts, rather than federal courts, resolve Plaintiffs' state law claims. These important considerations are not outweighed by any personal convenience to the parties in continuing to litigate in this forum. Accordingly, this Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims and dismisses these claims without prejudice. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988) ("When the balance of these factors indicates that a case properly belongs in state court, as when the federal

---

[3] Jurisdiction in this case was predicated exclusively on federal question jurisdiction pursuant to 28 U.S.C. § 1331.

[4] Plaintiffs also argue that their Complaint alleges a violation of the Interstate Stalking Statute, 18 U.S.C. § 2261A. That statute, however, is a federal criminal statute; it does not create a private cause of action and does not affect this Court's jurisdictional analysis.

law claims haves dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.").[5]

## V. CONCLUSION

For the foregoing reasons, Defendants' summary judgment motion is granted in part and denied in part. An appropriate order follows.

*/s/ Marilyn Heffley*
MARILYN HEFFLEY
UNITED STATES MAGISTRATE JUDGE

[5] This case originated in federal court. Therefore, the Court will dismiss the state law claims without prejudice rather than remanding them to state court.